## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERNEST BOCK & SONS, INC.**<br>2800 Southampton Road<br>Philadelphia, Pennsylvania 19154<br><br>Plaintiff<br><br>v.<br><br>**DEAN ENTERPRISES, INC.**<br>509 Moorestown Mt. Laurel Road<br>Mount Laurel, New Jersey 08054<br><br>Defendant | Civil Action No.: _____ |

## COMPLAINT

Plaintiff, Ernest Bock & Sons, Inc., by and through its undersigned counsel, Cohen Seglias Pallas Greenhall & Furman, P.C., hereby files this Complaint against Defendant, Dean Enterprises, Inc., and in support thereof, avers the following:

### Parties

1. Plaintiff, Ernest Bock & Sons, Inc. ("EBS") is a Pennsylvania corporation with its principle place of business located at 2800 Southampton Road, Philadelphia, Pennsylvania 19154. EBS is a construction industry general contractor.

2. Dean Enterprises, Inc. ("Dean Enterprises") is a New Jersey corporation with its principle place of business located at 509 Moorestown Mt. Laurel Road, Mount Laurel, New Jersey 08054. Dean Enterprises is a construction industry demolition contractor.

### Jurisdiction And Venue

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy

exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred, and a substantial part of the property that is the subject of the action is situated, in this judicial district—in Moorestown, New Jersey, where the project is located. Additionally, the parties agreed to have their disputes decided in this Court. **Exhibit 1**, Purchase Order, Section 25.2, below.

## Facts

5. Acts Retirement-Life Communities, Inc. ("Acts Retirement") is the owner of a complex of buildings located at 309 Bridgeboro Road, Moorestown, Burlington County, NJ 08057, known as "The Evergreens."

6. Acts Retirement contracted with EBS to demolish certain portions of the The Evergreens' buildings and construct new buildings in the same locations. Among the buildings was the "Brown Wing Building," which included, among others things, a hair salon, a physical therapy room, and a maintenance room in the basement.

7. In order to perform the demolition portion of the work, EBS contracted with Dean Enterprises by and through a Purchase Order dated August 28, 2021, signed by EBS on September 17, 2021 ("Purchase Order"). A true and correct copy of a portion of the Purchase Order (the entirety of which is too voluminous to attach hereto, but is in the possession of Dean) is attached hereto as **Exhibit 1**.

8. The Purchase Order states, in part, that Dean Enterprises shall "[s]upply all necessary labor, material, equipment, and supervision to complete all Brown Wing Building Demolition work on the above referenced project including but not limited to demolition of building structure, slab, footings and landscaping, backfill, grading, topsoil grass seed and dumpsters" for EBS at The Evergreens, in consideration of the base contract price of $29,859.00,

subject to additions and deletions in accordance with the Purchase Order (the "Project").  **Exhibit 1**, Description.

9. On December 1, 2021, at approximately 3:30 pm, while Dean Enterprises was performing demolition work on a portion of the Project's footing, it hit a "trust block" that was part of a 6" fire suppression main water line, causing the water line to separate and water to rush into the basement of the Brown Wing Building.  EBS, Dean Enterprises, and Project owner's maintenance staff attempted to turn off all of the water valves, but the water flow did not stop until Moorestown's Public Works Department arrived at approximately 4:15 pm to shut off the main water line valve.

10. The Brown Wing Building basement immediately flooded with approximately 3"-4" of water, and the interior sump pumps and clean-outs were backing up with water.  Floor coverings, drywall, cabinets, and maintenance equipment in the occupied spaces and corridors became saturated with water and mud.

11. At approximately 5:00 pm, EBS's Project Superintendent contacted Mr. Dean Kramer, President of Dean Enterprises, to advise him of the accident and to report it to his insurance carrier.  Mr. Kramer denied responsibility for the accident, and stated that his company contracted with a "utility marking company" prior to demolition, and nothing was identified in the area of the 6" water line.

12. Acts Retirement's facility supervisor contacted Servpro, which arrived at approximately 5:30 pm and began to clean up the water and mud.  EBS's Project Superintendent contacted Oliver Sprinkler, which arrived at approximately 6:00 pm, and also contacted an excavator to remove the dirt and mud to expose the 6" water line that had separated.  Oliver Sprinkler inspected the water line and connections, reconnected the line, and re-installed the thrust block.

13. At approximately 1:00 am on December 2, 2021, the main water line valve was opened and the connections were tested before backfilling the area. Anaconda Sprinkler tested the interior areas and all fire pumps, and determined that the system was operating properly.

14. After seven days, on December 8, 2021, Servpro removed all fans, filters, and other remediation equipment. EBS contracted with Eagle Industrial Hygiene to ensure that the moisture had been remediated so that EBS could repair the damaged walls.

## Count I: Breach of Contract

15. The foregoing paragraphs are incorporated by reference.

16. The Purchase Order states, in part, in the Description of the work:

> All work must be completed in strict accordance with Brown Wing Addt. Demolition Permit Set dated 6/5/202 as prepared by Kramer + Marks. … All work shall be performed in strict accordance with EPA, DEP, OSHA and all other applicable codes. Subcontractor shall be responsible to become familiar with and comply with all contract documents, which are available for review and copying at a reasonable cost for reproduction at Ernest Bock & Sons, Inc. Office. Subcontractor represents that it carefully examined all documents, plans, specifications, addenda, reports, attachments, etc. and understands these documents as well as all terms and conditions outlined in this purchase order. Subcontractor has also visited the site, familiarized itself with said site, its conditions and all of the work required and it has relied solely on its evaluation and investigation. … Subcontractor is responsible for all layout with respect to their work.

**Exhibit 1**, Purchase Order, Description.

17. N.J. Stat. Ann. § 48:2-80, "Underground facilities operator; responsibilities; liability," states, in part:

> An excavator that damages an underground facility in violation of the provisions of the "Underground Facility Protection Act," P.L.1994, c. 118 (C.48:2-73 et seq.) shall be liable for any costs, labor, parts, equipment and personnel downtime, incurred by the underground facilities operator that owns or controls the damaged underground facility.

N.J. Stat. Ann. § 48:2-80(a)(2)(d).

18. N.J. Stat. Ann. § 48:2-82, "Notification of one-call damage protection system by

excavator; information to be provided; duties of excavator," provides, in part:

> An excavator shall … [p]lan the excavation or demolition to avoid damage to and to minimize interference with underground facilities; [and u]se reasonable care during excavation or demolition to avoid damage to or interference with underground facilities ….

N.J. Stat. Ann. § 48:2-82(d)(2), (3).

19. N.J. Stat. Ann. § 48:2-89, "Failure to provide notice; prima facie evidence of negligence," provides:

> Evidence that an excavation or demolition that results in any damage to an underground facility was performed without providing the notice required pursuant to section 10 of this act shall be prima facie evidence in any civil or administrative proceeding that the damage was caused by the negligence of the person engaged in the excavation or demolition.

N.J. Stat. Ann. § 48:2-89.

20. N.J. Admin. Code § 14:2–3.3, "Excavators - onsite requirements," provides, in part:

> An excavator or responsible contractor shall … [p]lan the excavation or demolition with reasonable care so as to avoid damage to, and minimize interference with, underground facilities; [and u]se reasonable care during excavation or demolition to avoid damage to or interference with underground facilities ….

N.J. Admin. Code § 14:2–3.3(a)(2), (3).

21. Section 023000, "Earthwork," of the Project Specifications required Dean Enterprises to conduct below-grade inspections before digging:

> D. Call Local One Call System, Inc. not less than three working days before performing Work.
>
> 1. Request underground utilities to be located and marked within and surrounding construction areas.
>
> E. Identify and flag known utility locations. Notify utility company to remove and relocate utilities. Coordinate utility company access to construction area.
>
> F. Maintain and protect existing utilities to remain.

Specifications, Section 023000, "Earthwork," Sections 3.1.D-F. A true and correct copy of

Specification Section 023000, "Earthwork," Sections 3.1.D-F, is attached hereto and incorporated herein as **Exhibit 2**.

    22.    The Purchase Order states, in part, in Paragraph 13:

> To the fullest extent permitted by law. Subcontractor agrees to indemnify, hold harmless, and defend EBS and any of its affiliated entities, including, but not limited to, Bock Construction, Inc., … Owner, Architect, Engineer, … and their agents, employees, representatives, officers, directors, stockholders, members, managers, parents, subsidiaries, and affiliated companies (the "Indemnified Parties") from and against any and all liability for loss, damage, or expense of any nature for which the Indemnified Parties may be held liable.  This agreement specifically includes, but is not limited to, … damage to any property of whatsoever kind or nature or as a result of any … Economic Loss … monetary damages … arising out of or in any manner connected with the work to be performed for the Indemnified Parties (including, but not limited to, work performed under this Purchase Order …) even for, and if caused in whole or part by, any act, omission, or negligence of the Indemnified Parties.  … Additionally, Subcontractor shall defend the Indemnified Parties against any claim that may potentially give rise to indemnification of the Indemnified Parties, even if such claim alleges that the Indemnified Parties are wholly or partially at fault for causing the loss.  It is further expressly agreed that Subcontractor assumes to the fullest extent EBS's obligation from EBS's contract with Owner to indemnify and defend all parties, including, but not limited to … Owner, Architect, Engineer … (whether or not such obligations may extend to items beyond those addressed in this Purchase Order).
> . . .
>
> The obligations of Subcontractor to provide Indemnification shall survive any termination of this Purchase Order; the suspension, completion, and/or acceptance of the Work or any part thereof; and final payment to Subcontractor.  It being agreed that such rights and obligations are and shall be of a continuing nature and effect.

**Exhibit 1**, Purchase Order, Paragraph 13.

    23.    The Purchase Order states, in part, in Paragraph 15:

> Subcontractor is required to provide its own Property Insurance for its work and all materials, equipment, tools, etc.  Subcontractor waives all rights of recovery or subrogation against EBS for damages caused by fire or other perils to the extent covered by the Property Insurance obtained pursuant to this clause, whether such damage was or was not caused by the negligence, strict liability, or other actions or inactions of EBS.  ….

**Exhibit 1**, Purchase Order, Paragraph 15.

24. The Purchase Order states, in part, in Paragraph 28:

> In any instance whereby Contractor is entitled to be indemnified by or recover any monies from Subcontractor under the terms of this Purchase Order, Contractor shall be entitled to recover from Subcontractor: (a) interest on any sums due at the lesser of (i) 12% or (ii) the maximum interest rate permitted by law, per annum from the date due until paid; and (b) reasonable attorney's fees, charges, costs, and expenses incurred for all investigation, negotiation, litigation, arbitration, and other such services commonly performed by attorneys, including, without limitation, all court costs, fees paid to experts, arbitration fees, and like expenses, including such expenses as are incurred in executing and collecting upon any entered judgment or order.

**Exhibit 1**, Purchase Order, Paragraph 28.

25. By letter dated December 27, 2021, EBS's insurer, CNA, tendered the loss to Dean Enterprises. A true and correct copy of the December 27, 2021 letter is attached hereto and incorporated herein as **Exhibit 3**.

26. Dean Enterprises failed to respond to the December 27, 2021 letter. Therefore, on January 27, 2022, CNA sent a second letter to tender the loss to Dean Enterprises. A true and correct copy of the January 27, 2022 letter is attached hereto and incorporated herein as **Exhibit 4**.

27. Dean Enterprises was obligated by the Purchase Order, statutes, and regulations to identify the 6" water line in the area that it was excavating, and despite a representation that it had engaged a utility marking company prior to demolition, Dean Enterprises materially breached the Purchase Order by failing to accurately locate and carefully excavate the foundation to avoid the 6" water line.

28. Despite being obligated to do so by the Purchase Order, Dean Enterprises failed and refused to indemnify EBS for the damages it incurred as a result of Dean Enterprises' material breaches.

29. Pursuant to the Purchase Order, EBS is entitled to interest and attorney's fees, charges, costs, and expenses.

30. As a direct and proximate result of Dean Enterprises' material breaches, EBS incurred costs and expensed to remediate the damages caused by Dean Enterprises, including:

    A. Servpro water remediation ($124,734.86).
    B. Eagle Industrial Hygiene moisture testing ($600.00).
    C. Oliver Sprinkler inspection and remediation ($10,870.25).
    D. Anaconda Sprinkler ($1,357.00).
    E. Dale Construction remediation ($1,830.51).
    F. Bock Construction, Inc. remediation ($4,103.01).
    G. Interest, attorney's fees and expenses ($ to be determined).

31. All conditions precedent have been performed or have occurred.

WHEREFORE, Ernest Bock & Sons, Inc., demands judgment in its favor and against Dean Enterprises, Inc., in the amount of $143,495.63, plus interest, attorney's fees and expenses, and all other relief that the Court deems just and appropriate.

## Count II: Negligence

32. The foregoing Paragraphs 1-6, 9-14, and 17-20 are incorporated by reference.

33. As set forth above, N.J. Stat. Ann. § 48:2-82(d)(2), (3) and N.J. Admin. Code § 14:2–3.3(a)(2), (3) required Dean Enterprises to perform its work with reasonable care.

34. As set forth above, N.J. Stat. Ann. § 48:2-80(a)(2)(d) provides that an excavator (like Dean Enterprises) that damages an underground facility (like that owned by Acts Retirement) is liable for costs, labor, parts, equipment and personnel downtime. See id.

35. As set forth above, N.J. Stat. Ann. § 48:2-89 provides that excavation or demolition performed by a contractor like Dean Enterprises without notice to the One-Call Damage prevention System is *prima facie* evidence that the damage was caused the contractor's negligence. See id.

36. Dean Enterprises performed its demolition and excavation work without reasonable care, causing damage to the Acts Retirement building.

8

37. As a direct and proximate result of Dean Enterprises' negligence, EBS incurred costs and expensed to remediate the damages caused by Dean Enterprises, including:

    A.    Servpro water remediation ($124,734.86).
    B.    Eagle Industrial Hygiene moisture testing ($600.00).
    C.    Oliver Sprinkler inspection and remediation ($10,870.25).
    D.    Anaconda Sprinkler ($1,357.00).
    E.    Dale Construction remediation ($1,830.51).
    F.    Bock Construction, Inc. remediation ($4,103.01).
    G.    Interest, attorney's fees and expenses ($ to be determined).

WHEREFORE, Ernest Bock & Sons, Inc., demands judgment in its favor and against Dean Enterprises, Inc., in the amount in excess of $143,495.63, plus interest, attorney's fees and expenses, and all other relief that the Court deems just and appropriate.

## Designation of Trial Counsel

George E. Pallas, Esq., and Kathleen M. Morley, Esq., are hereby designated as trial counsel.

## Certification Pursuant to L. Civ. R. 11.2

The undersigned hereby certifies that, to the best of his/her knowledge, the matter in controversy is not subject to any other action pending in any other court, or of any pending arbitration or administrative proceeding.

                                      Respectfully submitted,

                                      **COHEN SEGLIAS PALLAS**
                                      **GREENHALL & FURMAN, P.C.**

Dated:  July 26, 2022            BY:   /s/ George E. Pallas
                                                     George E. Pallas; NJ Bar ID # 041371988
                                                       Kathleen M. Morley; NJ Bar ID # 039092009
                                                       One Newark Center
                                                       1085 Raymond Blvd., 21st Floor
                                                       Newark, NJ 07102
                                                       T: (973) 474-5003
                                                       gpallas@cohenseglias.com
                                                       kmorley@cohenseglias.com
                                                    *Attorneys for Plaintiff, Ernest Bock & Sons, Inc.*